<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SCOTT BRASHER,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY STATE PARK POLICE, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-01351-BRM-SDA<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are Defendants New Jersey State Park Police ("NJSPP"), NJSPP Sergeant Brian Calloway ("Calloway"), NJSPP Officer Bairon Serna ("Serna"), and NJSPP Officer Jeremiah Clancy's ("Clancy") (collectively, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 117) (the "Defendants' Motion") and Plaintiff Scott Brasher's ("Plaintiff") Cross-Motion for Summary Judgment Against Defendant Serna (ECF No. 118) (the "Cross-Motion"). Plaintiff's Cross-Motion also serves as an opposition to Defendants' Motion. (*Id.*) Defendants filed a reply in support of the Defendants' Motion (ECF No. 119) and Plaintiff filed a reply in support of the Cross-Motion (ECF No. 120). Having reviewed and considered the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's Cross-Motion for Summary Judgment Against Defendant Serna is **DENIED**.

I.    BACKGROUND

A.  Factual Background[1]

Generally, Plaintiff alleges Defendants violated his constitutional rights when Defendants Clancy and Serna arrested him following the Yves Saint Laurent Menswear Fashion Show ("YSL Fashion Show") at Liberty State Park in Jersey City, New Jersey on June 6, 2018. (ECF No. 36.) Plaintiff is a photographer and has worked as a freelance photographer since around 2008. (ECF 119 ¶ 1 (Defs.' Response to Pl.'s Statement of Disputed Material Facts ("SOMF")).) On June 6, 2018, Plaintiff attended the YSL Fashion Show at Liberty State Park in Jersey City, New Jersey. (*Id.* ¶ 2; ECF No. 118-2 ¶ 1 (Pl.'s Response to Defs.' SOMF).) The YSL Fashion Show was produced by Bureau Betak, which hired Allyson Higgins-Halfpenny ("Higgins-Halfpenny") as the executive producer for the event. (ECF Nos. 118-2 ¶¶ 2–3; 119 ¶ 3.)

The parties agree that the event was "invite-only" and the public relations ("P.R.") team of Yves St. Laurent was in charge of determining who could access the YSL Fashion Show (ECF

---

[1] The background facts are taken from the parties' admitted statements of material fact and accompanying exhibits. The Court deems supported factual contentions to be admitted, unless sufficiently disputed by reference to record evidence, and similarly construes as undisputed all facts in Defendants' Statement of Material Fact to which Plaintiff objects without citing to any record evidence. *See* L. Civ. R. 56.1(a); *Ullrich v. U.S. Sec'y of Veterans Affs.*, 457 F. App'x 132, 136–37 (3d Cir. 2012) ("[T]he party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. . . . A plaintiff's mere belief or contention . . . is not enough to create a dispute of material fact sufficient to survive summary judgment. . . . Federal Rule 56 explicitly requires the party asserting the absence or existence of a genuinely disputed fact to support that assertion by citing to specific parts of the record. A court may consider other materials in the record, but need only consider cited materials and may consider undisputed any fact not properly addressed by the party opposing it." (citations omitted)); *Stouch v. Twp. of Irvington*, Civ. A. No. 03-06048, 2008 WL 2783338, at *2 n.1 (D.N.J. July 16, 2008) ("deem[ing] [d]efendants' uncontested facts as admitted, unless disputed by [p]laintiffs in their brief and supported by the evidence"). Although the parties "aim to create the appearance of factual disputes," in some instances, the parties either do not cite to relevant record evidence or the cited evidence does not actually refute the relevant fact(s). *See Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019).

No. 119 ¶ 4), but they dispute the extent of Bureau Betak's control over invitations and access versus Yves Saint Laurent's P.R. team (ECF No. 118-2 ¶¶ 4–5). Defendants contend Bureau Betak's P.R. team was responsible for inviting guests, managing the guest list, and checking in guests, as well as providing press badges and credentials for photographers. (*Id.*) Plaintiff contends Bureau Betak did not send the invitations, and Yves Saint Laurent's P.R. team managed event access. (*Id.*) Plaintiff also maintains not all attendees were given event credentials (*Id.* ¶ 5 (citing ECF No. 118-6, NJSPP160, Event Evaluation Completed by Officer Michael D. Farrelly).)

In advance of the YSL Fashion Show, Defendant Calloway attended a meeting with its organizers in May 2018 to discuss physical security measures for the event. (*Id.* ¶ 6.) Defendant Calloway was the NJSPP point of contact responsible for coordinating the law enforcement security operations. (ECF No. 119 ¶ 6.) During this meeting, Defendant Calloway was educated on the badges event guests would be wearing. (*Id.* ¶ 7.) However, the parties dispute whether Defendant Calloway was informed "that each invited guest was issued a badge." (ECF Nos. 118-2 ¶ 7; 119 ¶ 11.) There is also disagreement regarding the NJSPP's expected role in confirming that individuals in the event area were invited guests. While Defendants maintain the NJSPP officers working the event perimeter were expected to "chec[k] guests inside the event were wearing lanyards" (ECF No. 118-2 ¶ 8 (citing 117-1, Ex. F., at 58:6–59:9), Plaintiff points to Defendant Calloway's testimony "he 'wouldn't expect [the officers] to go up to people who were already in the event and go hey, let me see your lanyard," (*id.*) and contends NJSPP officers "were to assume that anyone in the event area was . . . part of the event" (ECF No. 119 ¶ 9) and would direct any questions about attendee authorization to "someone involved with the event" (*id.* ¶ 10).

On the day of the YSL Fashion Show between 8:00 and 9:00 P.M., Defendants Clancy and Serna observed Plaintiff behind a bike fence (used as a perimeter for the event's restricted area)

near the Liberty House, where the event was taking place. (ECF No. 118 ¶ 9.) The officers observed Plaintiff leaning on the bike fence and photographing YSL Fashion Show guests as they arrived in Liberty State Park via ferry. (*Id.* ¶ 10; ECF No. 119 ¶ 13.) Defendants Serna and Clancy each warned Plaintiff separately not to lean on the bike fence. (ECF Nos. 118-2 ¶¶ 11–15; 119 ¶¶ 13–14.) At some point while guests were arriving via ferry, Defendants Serna and Clancy observed Plaintiff at an outdoor bar near the Liberty House. (ECF No. 118-2 ¶¶ 18, 20.) In his deposition, Plaintiff admitted he consumed beer on the night of the YSL Fashion Show. (*Id.* ¶ 21.) Defendant Serna's interactions with Plaintiff led him to believe Plaintiff was intoxicated, though Plaintiff contests this. (*Id.* ¶ 19.)

After the YSL Fashion Show concluded, Plaintiff testified he was invited by an unidentified P.R. representative to attend an after party on a boat leaving from the harbor. (ECF 119 ¶ 16.) Around 9:15 P.M., Defendants Clancy and Serna observed Plaintiff heading toward Dock A of Liberty State Park with a large group of guests. (*Id.* ¶¶ 16–17; ECF No. 118-2 ¶ 23.) Plaintiff contends he approached the dock with the P.R. representative who invited him and other guests. (ECF No. 119 ¶ 17.) At this point, Defendants Clancy and Serna approached Plaintiff. (*Id.* ¶ 24; ECF No. 118-2 ¶ 18.)

The parties dispute the sequence of events that followed. Defendants contend the officers approached Plaintiff to speak with him about being in the restricted area, which Defendant Clancy believed constituted a violation of "the defiant trespass statute under Title 2C and also the state park's statute for trespass." (ECF No. 118-2 ¶¶ 24–25.) According to Defendants, Defendant Clancy, assisted by Defendant Serna, put his hand out and made contact with Plaintiff, and informed him he was not allowed in the event without the proper credentials. (*Id.* ¶¶ 26–28.) Plaintiff asserts, based on his own testimony, the Defendant officers grabbed him and said he could

not enter, at some point pushing him against a fence barricade. (ECF Nos. 119 ¶¶ 18, 20; 117-1, Ex. E (Plaintiff Dep.) at 36:4–8.) While Plaintiff testified he "explained to the officers" he had been invited by the unnamed P.R. representative (ECF No. 119 ¶ 19), Defendants dispute he made a statement to that effect (*Id.* ¶ 19; ECF No. 118-2 ¶ 30). Instead, Defendants contend Plaintiff repeatedly yelled, "help me out," to the crowd. (ECF Nos. 118-2 ¶ 30; 119 ¶ 22.)

After this encounter, "Officer Clancy took control of Plaintiff's left arm and Officer Serna took control of Plaintiff's right arm" (ECF No. 118-2 ¶ 29) and began to move him away from the event area into a grassy field, with each Defendant remaining on the side of the arm they were holding (*id.* ¶¶ 31–33). At some point, Defendant Serna "applied a pain compliance hold" to Plaintiff. (ECF No. 119 ¶ 21.) Plaintiff asserts he attempted to comply with Defendants' efforts to remove him from the event area, but Defendants contend he resisted arrest by holding onto the fence railing and, later, planting his feet and dropping his body weight. (*Id.* ¶¶ 22–24.)

As Defendants Clancy and Serna moved Plaintiff to the grassy area, he ended up on the ground. (ECF Nos. 118-2 ¶ 34; 119 ¶ 25.) Defendants provide no explanation for how this happened. (ECF No. 118-2 ¶ 34.) Plaintiff contends he did not slip but that one of the officers escorting him struck him in the left knee, outside his "field of view," causing him to collapse to the ground. (ECF No. 119 ¶¶ 25, 27.) Plaintiff believes Defendant Clancy struck him, but he did not see it occur, and Defendants point to testimony by Plaintiff that shies away from identifying Defendant Clancy as the perpetrator. (*Id.* ¶ 26; ECF No. 118-2 ¶¶ 36–37.) Defendants Clancy and Serna deny hitting Plaintiff's leg or seeing the other do so. (ECF No. 118-2 ¶¶ 38–41.)

Once Plaintiff was on the ground, he was handcuffed by NJSPP Officer Kara. (*Id.* ¶ 42; ECF No. 119 ¶ 29.) Higgins-Halfpenny arrived at the scene after Plaintiff was on the ground and observed him screaming about the incident. (ECF No. 118-2 ¶¶ 44–46.) Higgins-Halfpenny

believed Plaintiff was drunk and belligerent, which Plaintiff denies. (*Id.* ¶ 47.) Officer Kara also believed Plaintiff to be intoxicated. (ECF No. 119 ¶ 51.) Though Defendant Serna did not smell alcohol on Plaintiff's breath, he noted his speech was "slurred." (*Id.* ¶ 31.) Defendants Clancy and Serna told Higgins-Halfpenny Plaintiff had jumped a fence, though they had not observed him doing so. (*Id.* ¶¶ 32–33.) Plaintiff was transported to the hospital where he was administered Ativan and diagnosed with a left tibial plateau fracture. (*Id.* ¶¶ 35; ECF No. 118-2 ¶¶ 43, 50.) Plaintiff underwent surgery on his knee and was discharged from the hospital on June 8, 2018. (ECF No. 119 ¶¶ 36, 39.)

Plaintiff received a summons for the events of June 6, 2018, in the early hours of June 7, and his camera was returned to him. (ECF Nos. 118-2 ¶ 52; 119 ¶ 37.) "Plaintiff was charged with N.J. Rev. Stat. § 2C:29-2A(3)(A) (resisting arrest), N.J. Rev. Stat. § 2C:29-1A (disorderly persons offense), N.J. Rev. Stat. § 2C:18-3B(3) (defiant trespass) and N.J. Rev. Stat. § 2C:33-2A(1) (disorderly conduct)." (ECF No. 118-2 ¶ 53.) The Complaint-Summons contained an Affidavit of Probable Cause completed by Defendant Clancy recounting the events of the encounter between Plaintiff and Defendants Clancy and Serna, of which Defendant Clancy certified he was aware through personal observation. (*Id.* ¶¶ 57–59.) After approximately six court appearances by Plaintiff, all charges against him were dropped. (ECF No. 119 ¶¶ 40–41.)

### B. Procedural Background

#### 1. Plaintiff's Suit

Plaintiff filed his initial complaint on October 10, 2019, against Defendants and several other NJSPP officers, both named and unnamed (the "Doe Defendants"). (ECF No. 1.) Plaintiff amended his complaint on May 29, 2020, removing certain named NJSPP officers and alleging causes of action for violations of Plaintiff's Fourth and Fourteenth Amendment Rights under 42

U.S.C. § 1983 ("§ 1983") (Count I); violations of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2, *et seq.* ("NJCRA"), and the New Jersey Constitution for use of excessive force (Count II); and common law claims of false arrest and false imprisonment, assault and battery, intentional infliction of emotional distress, negligence, and negligent hiring, training and supervision (Counts III–VII). (ECF No. 36 (Amended Complaint).) Defendants answered the Amended Complaint, raised affirmative defenses, and brought crossclaims against all defendants for indemnification and contribution on July 2, 2020. (ECF No. 38.) The parties were engaged in discovery when the matter was stayed during the pendency of Defendant Serna's bankruptcy proceeding (discussed *infra*), beginning on August 27, 2021. (ECF No. 50.) On March 14, 2022, the stay was lifted, and discovery resumed. (ECF No. 57.) On June 8, 2023, Hon. Joseph A. Dickson, U.S.M.J. (ret.), was appointed as a mediator. (ECF No. 84.) The parties completed discovery while engaging in mediation but were unable to reach an agreement; mediation was therefore terminated on December 14, 2023, and a dispositive motion schedule set. (ECF No. 96.)

Defendants initially filed the Defendants' Motion on February 2, 2024 (ECF No. 98), and Plaintiff filed the Cross-Motion on March 27, 2024 (ECF No. 105). On February 16, 2024, the matter was reassigned from the Hon. Kevin McNulty, U.S.D.J. (ret.), to the undersigned. (ECF No. 100.) At the request of Defendants, the motions were administratively terminated (ECF No. 111), and both parties re-filed their motions on June 17, 2024 (ECF Nos. 117, 118).[2] The parties

---

[2] In the opposition section of Plaintiff's Cross-Motion, Plaintiff announced he was dismissing the federal claims against Defendants Calloway, Clancy, and Serna in their official capacities. (ECF No. 118-1 at 12 n.4.) Plaintiff also voluntarily dismissed his common law claims for intentional infliction of emotional distress and negligent hiring, supervision, and training. (*Id.* at 28 n.6.)

also filed their respective reply briefs in opposition on the same day, having served them earlier per the Court's order. (ECF Nos. 119, 120.)

## 2. Defendant Serna's Bankruptcy Proceeding

On July 23, 2021, Defendant Serna and his wife filed a Chapter 7 voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of New Jersey (*In re Bairon F. Serna and Elizabet Serna*, Ch. 7 No. 21-15918-CMG (Bankr. D.N.J. Oct. 29, 2021) (the "Bankruptcy Petition"). (ECF No. 49.) Plaintiff was informed of the Bankruptcy Petition and notified counsel for Defendants on or about August 5, 2021. (*Id.* at 1.) Pursuant to 11 U.S.C. § 362(a)(1) and relevant case law, the parties requested Plaintiff's suit be stayed as to all Defendants during the pendency of the Bankruptcy Petition. (*Id.* at 1–3.) The Court granted this request on August 27, 2021. (ECF No. 50.) On October 21, 2021, Plaintiff filed an Adversary Complaint in Defendant Serna's bankruptcy case (*Scott Brasher v. Bairon Serna*, Ch. 7 No. 21-15918-CMG, Adv. No. 21-01408-CMG (Bankr. D.N.J. Oct. 21, 2021) (the "Adversary Proceeding"). (ECF No. 51.) The complaint in the Adversary Proceeding attached and recited the allegations of the Amended Complaint, including "that Defendant [Serna] intentionally, willfully, and[/or ]maliciously violated [Plaintiff's] rights under the United States Constitution, the New Jersey Civil Rights Act, the New Jersey Constitution, and New Jersey state law by falsely arresting Plaintiff, using excessive force against Plaintiff, creating and forwarding false police reports to prosecutors, and intentionally causing Plaintiff severe emotional distress," and asked the Bankruptcy Court to "[e]nter judgment that Defendant [Serna's] liabilities as a result of intentional, willful and malicious injuries to Plaintiff are non-dischargeable." (ECF No. 118-10 ¶¶ 28, 42(a).)

Defendant Serna failed to appear or answer in the Adversary Proceeding, so an entry of default was made on December 1, 2021, of which this Court was informed. (ECF No. 52.) On or

around December 28, 2021, Defendant Serna called the offices of Plaintiff's counsel regarding the Adversary Proceeding but did not reach counsel. (ECF Nos. 118-11, 118-12.) Plaintiff informed Defendant Serna's bankruptcy counsel[3] and counsel for Defendants of this contact. (*Id.*) On March 1, 2022, the Hon. Christine M. Gravelle, U.S.B.J., granted Plaintiff's motion for default judgment against Defendant Serna in the Adversary Proceeding (the "Default Judgment Order"). (ECF No. 54-1.) The default judgment was entered "as to liability in favor of the Plaintiff and against [Defendant Serna], and in the amount to be fixed by judgment in" this case. (*Id.* at 2.) The automatic stay provided for in the Bankruptcy Code was also lifted by the Default Judgment Order. (*Id.*) The Adversary Proceeding was closed on March 31, 2022. *Brasher v. Serna*, Ch. 7 No. 21-15918-CMG, Adv. No. 21-01408-CMG (Bankr. D.N.J. Mar. 31, 2022).

Following the Default Judgment Order, Defendants submitted a letter to this Court asking it to amend the Default Judgment Order as to liability and to "enter an Order that liability in this case as to all defendants remains an issue for the jury." (ECF No. 58 at 2.) Plaintiff responded, arguing the Court should deny Defendants' request or, in the alternative, "order formal motion practice and a briefing schedule" on the issue of amending the Default Judgment Order. (ECF No. 59 at 1.) On March 22, 2022, this Court held a Status Conference at which it addressed Defendants' request to amend the Default Judgment Order from the bench. (ECF No. 60.) The Court, Hon. Kevin McNulty, determined amending the Default Judgment Order was "not a letter-application-

---

[3] Correspondence between counsel for Plaintiff and Defendants indicates Defendant Serna's bankruptcy counsel was only representing Serna in the Bankruptcy Petition, not in the Adversary Proceeding. (ECF No. 118-12 ("[Plaintiff's counsel] informed Mr. Serna's bankruptcy attorney [of Defendant Serna's call] and he informed us that his office represented Mr. Serna in the bankruptcy proceeding but does not represent him in the adversary proceeding.").)

type issue" (ECF No. 99 at 8:12) and required a formal motion, which it invited Defendants to submit (*id.* at 9:01–08). No such motion was filed.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Additionally, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382

n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson*, 477 U.S. at 248, 255).

If the moving party bears the burden of proof at trial, summary judgment is not appropriate where the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553, 553 n.9 (1999) (noting "summary judgment is rarely granted in a plaintiff's favor in cases where the issue is a defendant's racial motivation, such as disparate treatment suits under Title VII or racial discrimination claims under 42 U.S.C. § 1981"). On the

other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

## III.    DECISION

The Court first addresses Plaintiff's Cross-Motion as to Defendant Serna, as it will affect to whom Defendants' Motion applies.[4]

### A.    Plaintiff's Cross-Motion

Plaintiff asks this Court to grant summary judgment in his favor against Defendant Serna because he argues the Default Judgment Order issued by the United States Bankruptcy Court for

---

[4] Neither party's briefings address the Doe Defendants remaining in the Amended Complaint. (ECF No. 36.) Pursuant to Federal Rule of Civil Procedure 21, which allows the district court to "on just terms, add or drop a party" *sua sponte*, and relevant Third Circuit precedent, the Court will dismiss all claims against the Doe Defendants. *See Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250–51 (3d Cir. 2009) (noting "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified" and affirming dismissal of John Doe defendants at close of discovery, before summary judgment). Plaintiff had over a year to engage in discovery into the identities of any Doe Defendants, and neither Plaintiff's statement of material fact nor his response to Defendants' statement of material fact reference any unidentified Doe Defendants relevant to this litigation. (ECF Nos. 118-2; 119.)

the District of New Jersey in Plaintiff's Adversary Proceeding decided Defendant Serna's liability in this matter, and the doctrine of collateral estoppel prevents relitigating this issue. (ECF No. 118-1 at 8.) Plaintiff argues issue preclusion applies to orders issued by bankruptcy courts and to orders obtained via default, and when a defendant "substantially participated in" the litigation leading to default or "the default was entered as a result of that party's bad faith conduct," a default judgment order can have "preclusive effect." (*Id.* at 9–10 (quoting *Varelli v. Baals (In re Baals)*, Nos. 21-13750 (JNP), 21-1272, 2023 Bankr. LEXIS 353, at *10–11 (Bankr. D.N.J. Feb. 8, 2023)).) Because Plaintiff contends Defendant Serna participated in the Bankruptcy Petition he opened despite failing to appear in the Adversary Proceeding, and Defendant Serna, his bankruptcy counsel, and counsel in this matter had notice of the Adversary Proceeding but did not intervene, the Default Judgment Order has preclusive effect. (*Id.* at 10.) Plaintiff also asserts the elements of issue preclusion are met because: (1) the Adversary Proceeding repeated the allegations here, and the Default Judgment Order reached Defendant Serna's liability on those allegations; (2) Defendant Serna was adequately represented in the Adversary Proceeding (which was filed in the Bankruptcy Petition, where he had counsel); and (3) the Default Judgment Order was sufficiently final because Defendant Serna did not appear in response to Plaintiff's default judgment motion, timely appeal the Default Judgment Order, or move the Court to modify the order. (*Id.* at 10–11.)

Defendants argue the Default Judgment Order cannot preclude this Court from considering Defendant Serna's liability. (ECF No. 119 at 12.) Defendants contend New Jersey law does not recognize default judgments as actually litigated unless the defendant substantially participated in the litigation or acted in bad faith. (*Id.* at 12–13 (citing *Grumbine v. Azeglio*, 422 B.R. 490, 496 (Bankr. D.N.J. 2010); *In re Baals*, 2023 Bankr. LEXIS 353 at *10).) Because Defendant Serna did not participate in the Adversary Proceeding, Defendants assert "the issue of his culpability was not

actually litigated," and his failure to respond there does not constitute an admission of liability. (*Id.* at 13.) Defendants also reject Plaintiff's view that the Default Judgment Order made a finding on liability. (*Id.*) Instead, Defendants argue the Default Judgment Order determined only that Defendant Serna's debt was non-dischargeable and anticipated "a full hearing" on the merits of Plaintiff's claim in this matter. (*Id.* at 14.) As a result, Defendants assert the Default Judgment Order was not a final judgment on the merits and cannot support collateral estoppel. (*Id.*)

In reply, Plaintiff argues collateral estoppel applies because Defendant Serna "intentionally failed to appear in the Adversary Proceeding," and the Default Judgment Order was a final judgment on liability for the claims at issue here. (ECF No. 120 at 1.) Plaintiff reiterates Defendant Serna's failure to appear at any stage in the adversary proceeding or appeal the Default Judgment Order was purposeful and merits consequences. (ECF No. 120 at 3.) Plaintiff analogizes to *Dermavance Pharms., Inc. v. Medinter, Ltd.*, No. 21-cv-01144, 2024 U.S. Dist. LEXIS 67040 (E.D. Pa. Apr. 11, 2024), where the court found a default judgment had preclusive effect because the defendant's failure to retain new counsel was willful, and default judgment acted as a means of sanctioning the party's actions. (*Id.*) Because the Adversary Proceeding could have discharged Defendant Serna's liability here, Plaintiff argues not giving preclusive effect to Defendant Serna's failure to defend himself in that matter would allow him "to wash his hands" of the Default Judgment Order. (*Id.* at 4 (citing *Blakey v. City of Pittsburgh Police Dep't.*, 449 F. App'x 135 (3d Cir. 2011); *Galantino v. Formica*, Nos. 88-4262, 89-935, 1989 U.S. Dist. LEXIS 14677 (E.D. Pa. Dec. 5, 1989)).) Plaintiff also contends Defendants' exchanges with this Court belie their argument

the Default Judgment Order is not a final judgment as to liability, as the Court invited Defendants to formally move to amend the Default Judgment Order, and they failed to do so. (*Id.* at 5–6.)

Issue preclusion, also known as collateral estoppel, is a doctrine which bars parties from re-litigating an issue determined by a "final and valid" judgment in any future lawsuit. *United States v. Rigas*, 605 F.3d 194, 217 (3d Cir. 2010). Courts assess five factors to determine if issue preclusion bars a claim in a new litigation:

> (1) the identical issue was decided in a prior adjudication; (2) the issue was actually litigated; (3) there was a final judgment on the merits; (4) the determination was essential to the earlier judgment; and (5) the party against whom the doctrine is asserted was a party or in privity with a party to the earlier proceeding.

*Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 225–226 (D.N.J. 2015). Here, the parties contest both whether the Adversary Proceeding adequately litigated Defendant Serna's liability and the finality of the Default Judgment Order.

"Like federal law, New Jersey courts generally do not apply collateral estoppel in the case of a default judgment because such judgments are not 'actually litigated.'" *In re Baals*, 2023 WL 1856638 at *4 (quoting *Azeglio*, 422 B.R. at 494). These default judgments may occur "where a defendant neglects or elects not to participate in any manner because of the inconvenience of the forum selected by the plaintiffs, the expense associated with defending the lawsuit, or some other reason." *In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997). However, courts may apply collateral estoppel in two scenarios: "where the defendant . . . substantially participated in the preceding litigation," or "where the default was entered as a result of that party's bad faith conduct." *In re Baals*, 2023 WL 1856638 at *4. In other words, if a default judgment in the preceding litigation serves "as a sanction for bad conduct" intended to frustrate the judicial process, issue preclusion is appropriate to prevent abuse. *Dermavance Pharms., Inc. v. Medinter, Ltd.*, Civ. A. No. 21-

15

01144, 2024 WL 1604005, at *2 (E.D. Pa. Apr. 11, 2024) (quoting *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019)).

As Plaintiff notes, Defendant Serna instigated the overarching Bankruptcy Petition in which the Adversary Proceeding occurred, but he did not participate in the Adversary Proceeding, even after being notified and served by Plaintiff. (ECF No. 118-1 at 10–11.) While Plaintiff characterizes Defendant Serna's outreach to Plaintiff's counsel's office as participation (ECF No. 120 at 2), substantial participation requires, at the very least, an appearance in the case itself. *See, e.g.*, *In re Cortuk*, 633 B.R. 236, 281 (Bankr. D.N.J. 2021) ("In the vast majority of cases[,] the defaulted party has had the opportunity to litigate the issues, but for whatever reason has chosen not to. . . .'[I]f failing to plead or otherwise defend gave . . . a default judgment issue preclusive effect, the exception would swallow the rule.'" (citations omitted)). That Defendant Serna was represented in the Bankruptcy Petition but not the Adversary Proceeding does not alter this analysis or indicate he acted in bad faith. Plaintiff points to *Dermavance* to support his view that the default judgment constituted a "sanction" against Defendant Serna for failing to retain counsel for the Adversary Proceeding, but that case is highly distinguishable. In *Dermavance*, the defendant had counsel in the preceding litigation (and had "participated extensively" in that litigation), then its counsel withdrew, and the defendant failed to retain new counsel, bringing the case to a halt. *Dermavance*, 2024 WL 1604005 at *2. Here, Defendant Serna's bankruptcy counsel never entered an appearance in the Adversary Proceeding and told Plaintiff he did not represent Defendant Serna in the Adversary Proceeding. (ECF No. 118-12.) Moreover, Defendant Serna never participated in any way in the Adversary Proceeding, whether through counsel or *pro se*,

making his case more akin to the typical default judgment scenario than an exceptional situation like *Dermavance*. *See Dermavance*, 2024 WL 1604005 at *2; *In re Docteroff*, 133 F.3d at 215.

The Court also finds the Default Judgment Order was not a final judgment on the merits which could support issue preclusion. *See Fitzgerald*, 92 F. Supp. 3d at 225–26. Unlike for claim preclusion, a final judgment on the merits need not be appealable. *See In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991). Rather, a final judgment in the context of issue preclusion may be "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect," such as a well-reasoned judicial opinion that addresses the relevant issues. *In re Docteroff*, 133 F.3d at 216 (quoting Restatement (Second) of Judgments § 13 (1982)) (holding default judgment was final where court in preceding litigation "wrote a thorough and thoughtful opinion . . . analyz[ing] whether default judgment was an appropriate sanction" for defendant's obstructionist conduct); *see also Ogbebor v. J.P. Morgan Chase, N.A.*, Civ. A. No. 16-3400, 2017 WL 449596, at *8 (D.N.J. Feb. 2, 2017) (finding issue preclusion did not apply because bankruptcy court's written opinion summarily rejecting application of legal doctrine to case in adversary proceeding did not constitute a final judgment). The Default Judgment Order, a one-page order which makes no reference to the substance of Plaintiff's claims against Defendant Serna and

provides no reasoning (ECF No. 54-1), does not meet this Circuit's definition of a final judgment.[5] *See In re Docteroff*, 133 F.3d at 216.

Accordingly, Plaintiff's Cross-Motion for Summary Judgment as to Defendant Serna is denied.

### B.  Defendants' Motion

Defendants assert they are entitled to summary judgment on several grounds. First, Defendants contend the Eleventh Amendment to the U.S. Constitution provides sovereign immunity for NJSPP as an arm of the state and excludes NJSPP as a "person" amenable to suit under § 1983 or the NJCRA. (ECF No. 117 at 2.) For the § 1983 claims brought against Defendants Calloway, Clancy, and Serna (the "Officer Defendants") in their individual capacities, Defendants argue they are entitled to qualified immunity. (*Id.* at 3.) Defendants also argue no facts support Plaintiff's § 1983 claims for false arrest, malicious prosecution, fabricating evidence, and failing to intercede. (*Id.*) Because Plaintiff cannot identify which officer engaged in unconstitutional misconduct or the nature of the misconduct, Defendants assert Plaintiff's § 1983 claim for excessive force fails as well. (*Id.*) Defendants argue the same liability and qualified immunity analysis also bars the NJCRA claims. (*Id.*) Finally, Defendants argue the New Jersey Tort Claims Act ("NJTCA") provides immunity from Plaintiff's common law claims. (*Id.*)

Plaintiff opposes summary judgment, arguing disputes of material fact as to the key events preclude summary judgment on Plaintiff's § 1983, NJCRA, and the state common law claims.

---

[5] Although Plaintiff cites Defendants' letter application to this Court to modify the language of the Default Judgment Order and subsequent failure to bring a formalized motion on the matter, as suggested by the Court, as evidence Defendants viewed the Default Judgment Order to be final and on the merits, this is of no moment. The fact that Defendants were at one point concerned about the impact of Default Judgment Order on this matter does not alter its content, on which the finality analysis is based. *See, e.g.*, *Ogbebor*, 2017 WL 449596 at *8.

(ECF No. 118-1 at 1.) Plaintiff also contends the Officer Defendants are not entitled to qualified immunity because their actions violated his clearly established rights. (*Id.* at 24–28.) And Plaintiff argues the Officer Defendants are not entitled to immunity under the NJTCA. (*Id.* at 29–30.)

The Court will first examine Defendants' Eleventh Amendment, qualified immunity, and NJTCA immunity arguments. *See Gruenke v. Seip*, 225 F.3d 290, 298–99 (3d Cir. 2000) ("Until the question of qualified immunity is addressed, a court cannot reach the underlying merits of the case." (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 813–20 (1982))).

### 1. Sovereign Immunity for NJSPP

Defendants argue the Eleventh Amendment of the United States Constitution bars "private suits against non-consenting States [and their sub-entities] in federal court." (ECF No. 117 at 10 (quoting *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190. 194 (3d Cir. 2008)).) Because NJSPP is a State entity,[6] which Plaintiff acknowledges, and therefore an arm of the State, Defendants assert it enjoys sovereign immunity and all claims against it must be dismissed. (*Id.* at 10–12.) Plaintiff does not rebut this argument.[7] (ECF No. 118-1.) Because the Court agrees NJSPP is a sub-entity of a state agency, it is "immune from suit by private parties in federal court." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001) ("This immunity extends to state agencies and departments."). Therefore, Defendants' Motion as to all claims against NJSPP

---

[6] NJSPP is a subdivision of the New Jersey Department of Environmental Protection. (ECF No. 117 at 11.)

[7] Plaintiff originally sued the Officer Defendants in their official capacities as well, and Defendants' brief addresses the application of sovereign immunity to them, but Plaintiff voluntarily dismissed those claims in its opposition. (ECF No. 118-1 at 12 n.4.)

is granted. As a result, the Court does not address Defendants' argument that NJSPP falls outside the statutory definitions of "person" in § 1983 or the NJCRA.

## 2.  Qualified Immunity for Officer Defendants

Defendants contend that, regardless of whether issues of fact exist as to a violation of Plaintiff's rights, the Officer Defendants in their individual capacities are entitled to qualified immunity because "no Defendant violated any constitutional right of Plaintiff that was 'clearly established' at the time of the incident."[8] (ECF No. 117 at 31.) Defendants argue Plaintiff has not provided clearly established law showing an arrest for defiant trespass on state property after warnings from officers and entering a restricted area violates a constitutional right such that qualified immunity cannot apply to his false arrest and false imprisonment claims. (*Id.* at 32.) Regarding Plaintiff's § 1983 claims for false imprisonment and malicious prosecution, Defendants assert qualified immunity applies "so long as the officer acted in good faith and with probable cause," even if the charges against Plaintiff were ultimately dropped. (*Id.*) Similarly, Defendants argue that, even if Plaintiff was in fact struck in the knee by one of the Officer Defendants during his arrest, qualified immunity applies to his excessive force and assault and battery claims, as the

---

[8] Plaintiff ostensibly brings all his claims against Defendants Calloway, Serna, and Clancy (ECF No. 36), but makes no reference to Defendant Calloway in his statement of material facts or in response to Defendants' statement of material facts (ECF Nos. 118-2, 119-1). Plaintiff's brief in opposition to Defendants' Motion mentions Defendant Calloway only twice, in reference to an after-the-fact email Defendant Calloway sent to Higgins-Halfpenny requesting her statement about the incident to support Plaintiff's contention that probable cause was lacking (ECF No, 118-1 at 22) and to argue Defendant Calloway "had a reasonable opportunity" to intervene to prevent what Plaintiff asserts was an unlawful arrest (*id.* at 24). For any claims where Defendant Calloway's involvement was not discussed in the Amended Complaint or in Plaintiff's briefings on Defendants' Motion, the Court determines there are insufficient facts in the record to state a claim against him, and summary judgment is granted on that basis. Because, as discussed *infra*, the Court determines it was not clearly established law that probable cause was lacking in the circumstances of Plaintiff's arrest, the malicious prosecution and failure to intercede in a false arrest claims are also barred by qualified immunity.

use of force is permissible to subdue a resisting suspect who is not yet restrained. (*Id.* at 33.) Because it is undisputed Plaintiff was not handcuffed at the time his knee was injured, and Plaintiff provides no further detail as to who struck him, how he was struck, or with what, Defendants argue the Officer Defendants are shielded by qualified immunity because no facts demonstrate a violation of clearly established law. (*Id.* at 33–34.) Additionally, Defendants assert these same arguments apply equally to Plaintiff's analogous NJCRA claims, as New Jersey's doctrine of qualified immunity "tracks the federal standard," as does New Jersey's equivalent of the Fourth Amendment prohibition on unreasonable search and seizure. (*Id.* at 34–35.)

Plaintiff asserts the Officer Defendants are not entitled to qualified immunity, pointing to Third Circuit caselaw to argue the general circumstances of his arrest are sufficient to indicate a violation of established law, even if the facts of Plaintiff's case are "novel." (ECF No. 118-1 at 24 (quoting *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 449 (3d Cir. 2020)).) Plaintiff contends the facts would allow a reasonable jury to determine he was arrested without probable cause, as Plaintiff complied with officers' instructions not to lean on the barricades, and it was unreasonable for the Officer Defendants to assume Plaintiff entered the YSL Fashion Show area uninvited. (*Id.* at 20.) As a result, Plaintiff argues qualified immunity does not apply to his false arrest and malicious prosecution claims because an arrest and prosecution without probable cause violate clearly established principles of law. (*Id.* at 25, 27.) And because Plaintiff asserts probable cause did not exist, he characterizes the narrative of his actions leading to arrest provided by Defendant Clancy as false (*id.* at 23) and asserts this falsification of police records was clearly established as unconstitutional (*id.* at 26–27). Similarly, Plaintiff argues Defendants Serna and Clancy are not entitled to qualified immunity for the excessive force claim because it was clearly outside the law to use force on an individual not resisting arrest, "even if he was initially non-compliant." (*Id.* at

26 (quoting *Anthony v. Seltzer*, 696 F. App'x 79, 82 (3d Cir. 2017)).) Finally, Plaintiff argues an officer's duty to intervene to prevent the use of excessive force is a clearly established principle such that qualified immunity cannot apply to Plaintiff's failure to intercede claim. (*Id.* at 27 (citing *Sanders v. Jersey City*, Civ. A. No. 18-01057, 2021 U.S. Dist. LEXIS 78681, at * 30 (D.N.J. Apr. 23, 2021); *Garbacik v. Janson*, 111 F. App'x 91, 94 (3d Cir. 2004)).)

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted). "Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." *Id.* "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 11 (citation omitted). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 12 (quoting *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015)).

Qualified immunity "interposes a significant hurdle for plaintiffs seeking to recover for asserted violations of civil rights at the hands of law-enforcement officials." *Morillo v. Torres*, 117 A.3d 1206, 1214 (N.J. 2015) (citation omitted). "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments[.]" *Sheehan*, 575 U.S. at 611 (citation omitted). Qualified immunity will not, however, act as a shield for "the official who knows or

22

should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506–07 (1978); *see also Roberson v. Borough of Glassboro*, 570 F. Supp. 3d 221, 232 (D.N.J. 2021) (finding police officers were protected by qualified immunity where the plaintiffs "failed to identify any evidence that [d]efendants were 'incompetent' or 'knowingly violated the law' when bringing Plaintiffs into custody at gunpoint"; and stating that "[a]t worst, [d]efendants made reasonable mistakes 'in circumstances that [were] tense, uncertain, and rapidly evolving' based on the information available to them at the time'" (citations omitted)); *but see Pomykacz v. Borough of W. Wildwood*, 438 F. Supp. 2d 504, 514–15 (D.N.J. 2006) (finding police officer not entitled to qualified immunity nor immunity under the NJTCA where officer knew he did not have probable cause to arrest the plaintiff "and made deliberate misrepresentations to the judge who issued the warrant in order to effectuate her arrest[,]" and noting the NJTCA "expressly excepts from protection public employees whose acts constitute 'willful misconduct'").

Courts undertake a two-step inquiry to determine the applicability of qualified immunity to a defendant:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted). In making this determination, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. If the answer to either question is "no," the analysis ends there. *See id.* at 245 (finding officers were entitled to qualified immunity because unlawfulness of officers'

conduct was not clearly established, without having to answer the question of whether officers violated plaintiff's constitutional rights). In assessing the second prong, whether the right was clearly established, courts must take care to "frame the right at issue 'in light of the specific context of the case, not as a broad general proposition.'" *Kedra v. Schroeter*, 876 F.3d 424, 449 (3d Cir. 2017) (quoting *Mullenix*, 577 U.S. at 11). Once so identified, however, "a general constitutional rule already identified in the decision law may apply to the specific conduct in question," meaning government officials "can still be on notice that their conduct violates established law even in novel factual circumstances." *Porter* 974 F.3d at 449 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Simply put, the court must ask, "was it 'objectively reasonable' for [the official] to believe" they were not violating the plaintiff's rights. *Lozano v. New Jersey*, 9 F.4th 239, 246 (3d Cir. 2021) (quoting *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997)).

### a. False Arrest, False Imprisonment, and Malicious Prosecution

The Court uses its discretion to look first to the second qualified immunity prong, *see Pearson*, 555 U.S. at 236, to determine whether the right purportedly at issue in Plaintiff's false arrest, false imprisonment, and malicious prosecution claims, framed in the context of Plaintiff's case, was clearly established, *see Kedra*, 876 F.3d at 449. Plaintiff characterizes the right at issue in those claims as "the right to be free from arrest except on probable cause." (ECF No. 118-1 at 25, 27 (quoting *Andrews v. Scuilli*, 853 F.3d 690, 705 (3d Cir. 2017)).) Defendants argue for a much narrower framing: the "right to not be arrested for defiant trespass at a state park after being warned on two occasions by officers for entering a restricted area without proper credentials and was thereafter observed by the same officers within a restricted area." (ECF No. 117 at 32.) The proper characterization lies somewhere in between. As the Third Circuit has recognized, "[t]here is no question that . . . the right to be free from arrest except on probable cause, was clearly

established" as of June 6, 2018, as was "the right to be free from prosecutions on criminal charges that lack probable cause." *Scuilli*, 853 F.3d at 705 (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)) (second alteration in original). However, the clarity of the right is evaluated in the context of the case. *See id.*; *Lozano*, 9 F.4th at 246 ("[W]e can easily address this claim at the second prong of the qualified immunity test—namely, whether a reasonable officer in [the officer's] position would have known that probable cause was lacking[.]").

Here, Defendants Serna and Clancy observed Plaintiff leaning on the fence in the restricted event area and twice warned him not to do so. (ECF Nos. 118-2 ¶¶ 10–15; 119 ¶¶ 13–14.) Plaintiff admits he did not fully comply with the warnings. (ECF No. 118-2 ¶ 16.) Defendant Serna's interactions with Plaintiff led him to believe Plaintiff was intoxicated. (*Id.* ¶ 19.) Defendants Serna and Clancy then observed Plaintiff in a fenced-off, restricted area, attempting to board a ferry with a crowd of guests, despite the earlier warnings to Plaintiff about being in or near the event area. (*Id.* ¶¶ 23–24.) While the parties dispute whether there was an understanding among the Officer Defendants and the organizers of the YSL Fashion Show that all event attendees would have credentials (ECF Nos. 118-2 ¶ 7; 119 ¶ 11), it would be objectively reasonable for Defendants Serna and Clancy to believe Plaintiff was not authorized to attend the event, having twice warned him against leaning on a fence in the event area without Plaintiff making any statement to indicate he was an invited guest. *See Lozano*, 9 F.4th at 246. Defendant Clancy also testified he understood Plaintiff "to have committed . . . defiant trespass" at the time he approached Plaintiff, contrary to New Jersey law.[9] (ECF No. 117, Ex. C at 94:08–17.) As a result, in the context of the events of

---

[9] Plaintiff disputes this interpretation of Defendant Clancy's testimony. (ECF No. 118-2 ¶ 25.) However, in the relevant portion of Defendant Clancy's deposition, he states a clear belief Plaintiff was committing defiant trespass when Clancy approached Plaintiff in the restricted area (ECF No. 117-1, Ex. C, at 94:08–17 ("Q: [W]hat charge did you understand [Plaintiff] to have committed? [Clancy]: I mean, there's a 2c charge for a defiant trespass. . . . Q: And that you would understand

June 6, 2018, it was not "sufficiently clear that every reasonable official would have understood" the Officer Defendants' actions to violate Plaintiff's right to be free from arrest, and later, prosecution, without probable cause. *Mullenix*, 577 U.S. at 11 (citation omitted). At most, the evidence adduced by Plaintiff describes "reasonable but mistaken judgments" by the Officer Defendants, which the doctrine of qualified immunity shields. *Sheehan*, 575 U.S. at 611. The Officer Defendants are therefore entitled to qualified immunity as to Plaintiff's claims for false arrest, false imprisonment, and malicious prosecution under § 1983, and Defendants' Motion as to these claims is granted.

### b. Excessive Force

Regarding Plaintiff's claims for use of excessive force, Defendants argue that, even if Plaintiff was struck by one of the Officer Defendants (which they do not concede), no clearly established law holds that an officer cannot strike an individual who they "perceiv[e] . . . to be physical[ly] resisting during his arrest . . . while not secured in handcuffs." (ECF No. 117 at 33.) However, both Defendants and Plaintiff agree that using force against a subdued or compliant suspect is a clearly established violation of the U.S. Constitution, and the Court's review of relevant Third Circuit case law confirms this understanding. *See Anthony v. Seltzer*, 696 F. App'x 79, 82 (3d Cir. 2017) ("[U]nder long-established Fourth Amendment law, force may not legitimately be used against an individual who is compliant and poses no ongoing threat to himself or others, or who is not resisting arrest, even if he was initially non-compliant."); *Peroza-Benitez v. Smith*, 994 F.3d 157, 171 n.7, 171–72 (3d Cir. 2021) (finding use of taser on plaintiff while

---

that he had made those criminal acts prior to you approaching him, correct? [Clancy]: Correct.").) As this section of Defendant Clancy's deposition testimony is Plaintiff's only supporting evidence to dispute Defendant Clancy knew with what Plaintiff would be charged, Plaintiff's objection does not sufficiently raise a genuine dispute of material fact as to whether any constitutional violation was clearly established. *See Nebraska*, 507 U.S. at 590 (1993).

unconscious would violate clearly established right against the use of excessive force if plaintiff's version of events was credited by jury, and noting in dicta plaintiff's prior attempt to flee did not change the analysis because use of force might no longer be justified "once [the] individual no longer poses a threat"); *Hughes v. Herbster*, No. 23-3122, 2024 WL 4707882, at *4 (3d Cir. Nov. 7, 2024) ("[W]e have held . . . 'that an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down.'" (quoting *El v. City of Pittsburgh*, 975 F.3d 327, 340 (3d Cir. 2020))).

Plaintiff has testified both that he did not resist arrest and that he was struck in the knee by Defendant Clancy or Defendant Serna, though he believes it was Defendant Clancy. (ECF No. 119 ¶¶ 22–26.) If Plaintiff's testimony about his lack of resistance is credited, as it must be as the non-moving party at summary judgment, a reasonable jury could find Plaintiff's Fourth Amendment right not to be struck while attempting to comply with an arrest was violated. *See Peroza-Benitez*, 994 F.3d at 169 (finding plaintiff's testimony about conditions under which police officers tased him could allow a reasonable jury to find a violation of a clearly established right despite conflicting testimony from defendant officers). This determination is reinforced by factors enunciated in *Graham v. Connor*, 490 U.S. 386 (1989), which "clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Peroza-Benitez*, 994 F.3d at 166 n.4 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). The *Graham* factors are:

> "[T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight, the physical injury to the plaintiff, 'the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context

> of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time[.]"

*Hughes*, 2024 WL 4707882 at *3 (internal quotations and citations omitted).

The crimes at issue, at least prior to Plaintiff's arrest, were trespass-related, and possibly disorderly conduct based on Plaintiff's interactions with Defendants Clancy and Serna, and not particularly severe. (ECF No. 117-1, Ex. C, at 83:22–85:21, 94:05–95:16.) However, Plaintiff's injury, a broken knee requiring surgery, was serious. (ECF No. 119 ¶¶ 35, 39.) There is no evidence to suggest Plaintiff was suspected of being armed or a danger to the Officer Defendants, only Defendants' testimony he was resisting, or that the Officer Defendants had to contend with anyone other than Plaintiff, particularly after he was moved to the grassy area from the event space. (ECF No. 118-2 ¶¶ 28–34.) And again, if Plaintiff's testimony is credited by a jury, he was not resisting arrest. (ECF No. 119 ¶¶ 22–24.) While Defendants raise a valid point that Plaintiff's version of events is supported only by his testimony and is light on details, as Plaintiff admits he did not see what hit his knee, Defendants have nothing but testimony to offer in response. (ECF No. 118-2 ¶¶ 37–39.) The resolution of this issue therefore turns on witness credibility, and a reasonable jury might choose to credit Plaintiff's testimony over Defendants Clancy and Serna. *See Reeves*, 530 U.S. at 150–51 ("Credibility determinations . . . are jury functions, not those of a judge.").

Because a reasonable jury could find the facts in evidence show a violation of Plaintiff's clearly established constitutional right not to be struck while attempting to comply with an arrest, qualified immunity does not shield Defendants Clancy and Serna. Defendants' Motion is denied as to Plaintiff's claims for use of excessive force under § 1983 and the NJCRA.

### c.  Fabrication of Evidence

Plaintiff argues, and Defendants do not contest, that fabricating evidence is constitutionally impermissible under clearly established law. (ECF No. 118-1 at 26 (citing *Halsey v. Pfeiffer*, 750

F.3d 273, 292 (3d Cir. 2014)).) Therefore, the Court will focus its analysis on whether Plaintiff has met the summary judgment standard to show a violation of a constitutional right. *See Pearson*, 555 U.S. at 232.

The Third Circuit has held a criminal defendant "may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016), as amended (Sept. 16, 2016). There must be a "meaningful connection" between the due process injury alleged and the use of fabricated evidence in the criminal proceeding. *Id.* at 372 (quoting *Halsey*, 750 F.3d at 294 n.19). However, "[t]here must be 'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith." *Id.* (quoting *Halsey*, 750 F.3d at 295). The Third Circuit recently clarified that "bad faith" in the context of a fabrication of evidence claim means the defendants "formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth." *Mervilus v. Union Cnty.*, 73 F.4th 185, 194–95 (3d Cir. 2023). "[W]hile reasonable inferences must be drawn in the nonmoving party's favor, 'an inference' of fabrication 'based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" *Brackbill v. Ruff*, No. 22-1628, 2023 WL 5447271, at *3 (3d Cir. Aug. 24, 2023) (quoting *Halsey*, 750 F.3d at 287). Indeed, "our case law is clear that 'testimony that is . . . simply disputed should not be treated as fabricated[.]'" *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 70 (3d Cir. 2017) (quoting *Black*, 835 F.3d at 372) (first alteration in original) (affirming dismissal of fabrication of evidence claim on basis of a "'he said, she said' dispute" between police report of plaintiff's actions and appearance during traffic stop and plaintiff's

29

account of events); *see also Thomas v. Weiss*, Civ. A. No. 21-14554, 2024 WL 2830662, at *10–11 (D.N.J. June 4, 2024) (granting summary judgment for police defendants on fabrication of evidence claim where plaintiff disputed police testimony and court determined, even if allegedly false statement was excised, officers "still had probable cause to arrest and charge [him]"); *Gimenez v. Borough of Elmwood Park*, Civ. A. No. 2:17-07177, 2022 WL 1486194, at *7, *7 n.19 (D.N.J. May 10, 2022) (granting summary judgment for police defendants on fabrication of evidence claim because "no reasonable jury would conclude" evidence at issue, photos where plaintiff's license was placed next to drug-related evidence, "influenced the decision to bring criminal charges against him," and plaintiff did not bring specific proof evidence was fabricated).

In light of the foregoing case law, Plaintiff's fabrication claim does not survive summary judgment. Here, Plaintiff presents only his testimony that he did not resist arrest (ECF No. 119 ¶¶ 25–27) to counter the statements in the Complaint-Summons and Affidavit of Probable Cause completed by Defendant Clancy that Plaintiff did, in fact, resist (*id.* ¶¶ 52–59). The Complaint-Summons and Affidavit of Probable Cause align with Defendants Clancy and Serna's testimony. (*Id.* ¶¶ 21–24.) This "he said, she said dispute" is precisely the type of speculative debate the Third Circuit has said cannot survive summary judgment. *Boseman*, 680 F. App'x at 70 (internal citations omitted); *see also Brackbill*, 2023 WL 5447271 at *3. In addition, because the Officer Defendants' belief that Plaintiff had already violated the defiant trespass statute was objectively reasonable, *see supra* Part III.B.2.a, even if the Complaint-Summons and Affidavit of Probable Cause were fabricated as to Plaintiff's resisting arrest, there is a reasonable likelihood Plaintiff would have

faced criminal charges for defiant trespass. *See Black*, 835 F.3d at 371; *Gimenez*, 2022 WL 1486194, at *7; *Thomas*, 2024 WL 2830662 at *10–11.

Though the decision to deny qualified immunity on Plaintiff's claim for excessive force based on the conflicting testimony between Plaintiff and the Officer Defendants but grant it on the fabrication claim may seem incongruous, there is a difference in kind between the elements needed to prove an excessive force claim and the standard in this Circuit for a fabrication claim. Whereas an excessive force claim is evaluated using the *Graham* factors, discussed *supra*, and deals with evidence of what actually occurred, a fabrication of evidence claim looks to the circumstances of the allegedly fabricated evidence and whether it is reasonably likely criminal charges would have been brought without it, *see Black*, 835 F.3d at 371. The Third Circuit has described the bar for a successful fabrication claim as "notable" and repeatedly stated "it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case." *Id.* at 372 (quoting *Halsey*, 750 F.3d at 295). Indeed, the Third Circuit has cautioned that "incorrect or . . . disputed" evidence should not be viewed as fabricated "merely because it turns out to have been wrong." *Boseman*, 680 F. App'x at 69 (quoting *Black,* 835 F.3d at 372). While Plaintiff accurately describes the charges against him as "brought based on the accusations in the sworn complaint signed by [Defendant] Clancy[,]" (ECF No. 119-1 ¶ 38), there is nothing to support the broad allegation in the Amended Complaint this document was created "intentionally, and/or with a deliberate indifference to or a reckless disregard for" the consequences (ECF No. 36 ¶ 38) as required to succeed on a fabrication of evidence claim, *see Black*, 835 F.3d at 372. As a result, Plaintiff has not shown a constitutional violation of his due process rights based on the Complaint-Summons and Affidavit of Probable

Cause, and the Officer Defendants are entitled to qualified immunity. Defendants' Motion is therefore granted as to the fabrication of evidence claim under § 1983.

### d. Failure to Intercede[10]

Plaintiff argues, and Defendants do not contest, that it is clearly established a police officer must intervene to prevent the use of excessive force on a victim by another officer. (ECF No. 118-1 at 27 (citing *Sanders*, 2021 U.S. Dist. LEXIS 78681 at *30).) Again, the Court will focus its

---

[10] In his opposition, Plaintiff describes his failure to intercede claim as applying to all other claims (ECF No. 118-1 at 23–24), though he opposes the application of qualified immunity for the failure to intercede only as to the excessive force claim (*id.* at 27–28). The Third Circuit has yet to decide if a failure to intercede claim is cognizable in the false arrest context but has affirmed a dismissal of such a claim, without so deciding, when "it was not objectively unreasonable for [the officer defendant] to believe there was probable cause." *Lozano*, 9 F.4th at 246 n.4. As this is what this Court found as to Plaintiff's false arrest claim, it follows the example set in *Lozano* and grants summary judgment on the basis of qualified immunity for this theory of liability. Other courts in this Circuit have rejected similar requests to recognize failure to intercede or intervene claims for other constitutional violations where direct liability exists. *See Outlaw v. City of Philadelphia*, Civ. A. No. 21-1290, 2021 WL 3471168, at *7 (E.D. Pa. Aug. 6, 2021) (rejecting claims for failure to intervene in constitutional violations other than excessive force because it failed to identify "any cases from our Court of Appeals finding that fabrication, withholding of evidence, and failing to conduct a 'constitutionally sound investigation' would establish a duty to intervene"); *Thorpe v. City of Philadelphia*, Civ. A. No. 19-5094, 2020 WL 5217396, at *10 (E.D. Pa. Sept. 1, 2020) (finding same because taking the view that a reasonable official "ought to have intervened to stop conduct which is violating an individual's constitutional rights . . . runs the risk of defining the clearly established law 'at a high level of generality,'" contrary to Supreme Court precedent (citations omitted)); *Onyiah v. City of Philadelphia*, 660 F. Supp. 3d 407, 416 (E.D. Pa. 2023) ("[T]here is simply no persuasive authority on which we could conclude that [police defendants] had a clearly established duty to intervene to prevent Plaintiff's coerced confession or malicious prosecution."); *Weimer v. Cnty. of Fayette, Pa.*, 972 F.3d 177, 191 (3d Cir. 2020) (overturning district court ruling that failure to intervene to prevent unconstitutional investigation was clearly established for purposes of qualified immunity analysis); *Thomas v. City of Harrisburg*, 88 F.4th 275, 286 (3d Cir. 2023), *cert. denied sub nom. Foose v. Thomas*, No. 23-1108, 2024 WL 4426554 (U.S. Oct. 7, 2024), *and cert. denied sub nom. Kinsinger v. Thomas*, No. 23-1204, 2024 WL 4426555 (U.S. Oct. 7, 2024) ("Because there is not a clearly established right to intervention to prevent a violation of the right to medical care, the Officers are entitled to qualified immunity[.]"). As Plaintiff fails to present evidence that the Third Circuit, or any federal court, has recognized failure to intercede claims outside of the excessive force context, the Court determines there is no clearly established law that an official's failure to prevent any of these activities is a constitutional violation. Defendants' Motion as to such failure to intercede claims is therefore granted.

analysis on whether Plaintiff has met the summary judgment standard to show a violation of a constitutional right. *See Pearson*, 555 U.S. at 232.

The Third Circuit has stated '"[a] police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force [constituting a constitutional violation] . . . if there is a realistic and reasonable opportunity to intervene." *Hughes*, 2024 WL 4707882 at *5 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002)) (last alteration in original). Courts have found no realistic opportunity to intervene in another officer's use of force when the encounter in which force was used lasted only a few seconds or was without warning. *See El*, 975 F.3d at 336 (reversing denial of summary judgment on failure to intervene claim where use of force by other officer "lasted about five seconds"); *Greene v. Kelly*, No. 20-2847, 2022 WL 1024611, at *4 (3d Cir. Apr. 6, 2022) (upholding summary judgment for officer defendants on failure to intervene claim, despite reversing summary judgment on excessive force claim for some defendants, because encounter in which force was used lasted seconds); *Sanders v. Jersey City*, Civ. A. No. 18-01057, 2021 WL 1589464, at *10–11 (D.N.J. Apr. 23, 2021) (granting summary judgment as to failing to intervene when officer shoved plaintiff "spontaneously and without warning" but denying summary judgment as to subsequent actions by the same officer where questions of fact existed as to what other officer on the scene could see or how other officer perceived first officer's subsequent use of force); *Morales v. Maxwell*, 600 F. Supp. 3d 497, 526 (D.N.J. 2022) (dismissing failure to intervene claim where plaintiff did not allege the length of the encounter in which excessive force used or opportunity for other officer to intervene); *but see Hughes*, 2024 WL 4707882 at *5 (affirming summary judgment denial because

of "disputed factual question of whether [defendant] had a real opportunity to intervene based on the video footage" showing 45 seconds of a physical altercation).

Plaintiff has not adduced facts such that a reasonable jury could conclude the Officer Defendants could have prevented any excessive force used when Plaintiff's knee was injured. While Plaintiff contends the interaction took minutes (ECF No. 118-1 at 23), this timeframe encompasses the process of removing Plaintiff from the event area and arresting him. However, courts in this Circuit look to the time elapsed during the alleged use of excessive force itself, not the surrounding events. *See El*, 975 F.3d at 336; *Greene*, 2022 WL 1024611 at *4; *Sanders*, 2021 WL 1589464 at *10–11. In Plaintiff's own words, the blow that injured his knee happened "all of a sudden[.]" (ECF No. 117-1, Ex. E. at 110:04–05.) Even assuming one of the Officer Defendants struck Plaintiff's knee, Plaintiff's undisputed testimony describes a spontaneous act that occurred in seconds, and which the other Officer Defendant could not have realistically prevented. *See El*, 975 F.3d at 336; *Greene*, 2022 WL 1024611 at *4; *Sanders*, 2021 WL 1589464 at *10–11. Therefore, no reasonable jury could find the Officer Defendants violated Plaintiff's constitutional right by failing to intervene. Defendants' Motion as to the failure to intercede claim under § 1983 is therefore granted, as the Officer Defendants are entitled to qualified immunity.

### 3.  New Jersey Tort Claims Act Immunity

Defendants argue summary judgment should also be granted for Plaintiff's remaining common law claims—assault and battery, negligence, and false arrest and imprisonment—based on the NJTCA's immunity provisions. (ECF No. 117 at 36.) Pursuant to the NJTCA provisions in N.J. Stat. Ann. § 59:3-3, Defendants assert Defendants Calloway, Clancy, and Serna may not be held liable for assault and battery or negligence if they acted with "objective or subjective good faith." (*Id.* at 37 (quoting *Dunlea v. Twp. of Belleville*, 793 A.2d 888, 890 (N.J. Super. App. Div.

2002)).) Defendants argue the objective good faith standard under NJTCA is coterminous with the qualified immunity "objective reasonableness" and "clearly established" standards, and therefore the Officer Defendants are entitled to immunity for negligence and assault and battery as they would be for equivalent federal § 1983 claims. (*Id.* 37–38.) Defendants contend they are also entitled to immunity for the false arrest and imprisonment common law claims pursuant to N.J. Stat. Ann. § 59:3-8 absent a showing that "actual fraud, actual malice or willful misconduct" was the sole reason for the prosecution, or conduct outside the scope of employment. (*Id.* at 39 (quoting *Van Engelen v. O'Leary*, 732 A.2d 540, 546–48 (N.J. Super. App. Div. 1999)).) Because Defendant Clancy initiated the criminal proceedings against Plaintiff in a typical and lawful manner, Defendant Serna was listed as a witness in those materials, and no facts indicate Defendant Calloway's involvement in the proceeding, Defendants conclude the Officer Defendants are entitled to immunity for the false arrest and imprisonment claims as well. (*Id.*) Plaintiff disagrees, arguing Defendants have not shown the Officer Defendants acted in good faith, and "[g]enuine disputes [exist] as to whether Defendants maliciously or willfully caused the harm to Plaintiff[.]" (ECF No. 118-1 at 29–30.)

### a.  Assault and Battery and Negligence

N.J. Stat. Ann. § 59:3-3 provides immunity for a public employee "if he acts in good faith in the execution or enforcement of any law." Good faith immunity applies if the official "demonstrates 'objective reasonableness' or that he behaved with 'subjective good faith,'" *Alston v. City of Camden*, 773 A.2d 693, 703 (N.J. 2001) (quoting *Fielder v. Stonack*, 661 A.2d 231, 246 (N.J. 1995)), rather than "willful misconduct," *id.* If the official can show "either objective or subjective good faith," immunity attaches. *Id.* Because the New Jersey Supreme Court has held the § 1983 "objective reasonableness" standard "also governs questions of good faith arising under

the [NJTCA], . . . if the alleged tort and alleged constitutional violation arise out of the same conduct, and the Court concludes that no constitutional violation occurred because the public employee's actions were objectively reasonable, the NJTCA's good faith provision applies and bars prosecution of the tort claim." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 445 (D.N.J. 2011) (quoting *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1153 (N.J. 2000)).

Plaintiff's negligence and assault and battery claims clearly arise out of the same conduct as his § 1983 claims, all but one of which this Court found to be objectively reasonable and entitled to qualified immunity under the federal standard. The exception was Plaintiff's excessive force claim, for which the Court determined disputes of material fact exist, based in witness testimony, regarding the parties' conduct that are inappropriate for the Court to resolve. *See supra* Part III.B.2.b. As a result, Defendants are entitled to NJTCA good faith immunity as to the negligence claim, except as to any potential negligence liability arising from the use of excessive force, but are not entitled to good faith immunity for the assault and battery claim. *See, e.g.*, *Acerra v. Thomas*, Civ. A. No. 19-19933, 2024 WL 3226814 (D.N.J. June 28, 2024) (rejecting NJTCA good faith immunity defense for negligence and assault and battery claims stemming from alleged use of excessive force where disputes of fact were found to bar qualified immunity for § 1983).

### b.  False Arrest and Imprisonment

Good faith immunity is not available for common law claims of false arrest and false imprisonment; there, a public employee is liable if "his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." *Toto v. Ensuar*, 952 A.2d 463, 469–70 (N.J. 2008) (quoting N.J.S.A. 59:3–14). But "willful misconduct requires 'much more' than mere negligence." *Alston*, 773 A.2d at 702 (quoting *Fielder*, 661 A.2d 231, 242). The New Jersey Supreme Court has held a plaintiff may recover under N.J. Stat. Ann.

59:3–14 if "the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." *Id.* (quoting *McLaughlin v. Rova Farms, Inc.*, 266 A.2d 284, 293 (1970)). But the New Jersey Supreme Court has also noted there is little daylight between the good faith and willful misconduct standards codified in the respective provisions of the NJTCA, *id.* at 704, and courts have concluded no willful misconduct took place when qualified immunity was available in analogous § 1983 claims, *see, e.g.*, *Hickman v. Borough*, Civ. A. No. 15-3578, 2017 WL 1197806, at *15 (D.N.J. Mar. 31, 2017) ("[T]he Court has determined in its consideration of Plaintiff's § 1983 claim, that [defendant's] conduct was objectively reasonable. [Defendant] therefore also did not engage in any willful misconduct in this case."); *Ianuale v. Borough of Keyport*, Civ. A. No. 16-9147, 2018 WL 5005005, at *12 (D.N.J. Oct. 16, 2018) (finding defendants' conduct was objectively reasonable for § 1983 claim and that "Officer Defendants, therefore, also did not engage in any willful misconduct"); *see also Gensinger v. Reyes*, No. A-2701-18T2, 2020 WL 6703370, at *6 (N.J. Super. Ct. App. Div. Nov. 16, 2020) (affirming dismissal of claims, including false arrest, because of NJTCA immunity where pleadings lacked reference to malicious acts and "ample probable cause existed"). Additionally, at least one court in this District has noted that, under New Jersey law, "[c]arelessness or poor decision making do not constitute actual fraud, actual malice or [willful] misconduct." *Miller v. N.J. Dep't of Corr.*, Civ. A. No. 08-3335, 2010 WL 5464310, at *10 (D.N.J.

Dec. 29, 2010) (quoting *Van Engelen v. O'Leary*, 732 A.2d 540, 546 (N.J. Super. Ct. App. Div. 1999)) (first alteration in original).

This Court already found the Officer Defendants, at worst, made a reasonable but mistaken determination of probable cause to arrest Plaintiff for defiant trespass. *See* Part III.B.2.a. New Jersey law requires more than "poor decision making" to find willful misconduct or malice on the part of state officials. *Miller*, 2010 WL 5464310, at *10. The Officer Defendants are entitled to immunity under N.J. Stat. Ann. 59:3–14, and Defendants' Motion as to the common law false arrest and imprisonment claims is granted.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Cross-Motion (ECF No. 118) is **DENIED**, and Defendants' Motion (ECF No. 117) is **GRANTED IN PART AND DENIED IN PART**. An appropriate Order follows.


Dated: January 30, 2025

                              */s/ Brian R. Martinotti*
                              **HON. BRIAN R. MARTINOTTI**
                              **UNITED STATES DISTRICT JUDGE**